S. E. GATES, Appellant, v. F. T. IVES et al., Appellees.

**EXECUTION: Sale—Redemption—Necessity for Actual Deposit.** Redemption from mortgage foreclosure sale may not be had, in the absence of an *actual* deposit of the full amount of money necessary to effect redemption.

**EXECUTION: Sale—Redemption—Nonowner.** Application to redeem as owner necessarily must be denied when, on the record, it appears that the applicant holds a deed from one who, when he assumed to convey, had no interest in the property.

**EXECUTION: Sale—Redemption—Necessary Affidavit by Lien Holder.** Redemption by a lien holder may not be effected without an affidavit reciting the nature of his lien, amount due thereon, and the amount he is willing to credit thereon, as required by Sec. 4056, Code, 1897.

*Appeal from Louisa District Court.*—OSCAR HALE, Judge.

JUNE 25, 1921.

ACTION in equity, in which plaintiff seeks to redeem land under execution sale. Plaintiff also asked an injunction to restrain the sheriff and the administratrix from proceeding with the sale under the levy on the equity of redemption. A temporary injunction was granted. After a full trial, the trial court found for the defendants, dismissed plaintiff's petition, and dissolved the temporary writ. The plaintiff appeals.— *Affirmed.*

*Seerley & Clark,* for appellant.

*H. O. Weaver* and *Arthur Springer,* for appellees.

PRESTON, J.—The action is to redeem from the sale of 200 acres of land. The only parties named as defendants in the original petition are those stated in the caption.

Some dates, which seem to be material, may be helpful in understanding the case, and will be first stated. One Henry Braue, while the owner of the land in controversy, had executed

to one J. N. Dutton a first mortgage thereon. Later, Braue con-
veyed the land to C. T. Wagler, who, on August 28, 1916,
executed to Braue a second mortgage on the land for $4,500,
due in 10 years. Subsequently, and on April 1, 1918, the ad-
ministratrix of the estate of J. N. Dutton brought a foreclosure
suit, making Henry Braue, the then holder of the $4,500 mort-
gage, a party, who appeared in the action. Decree of fore-
closure was entered, April 17, 1918. The judgment ran against
C. T. Wagler, the then owner of the land, and, as we understand
the record, against Braue, the maker of the mortgage, as well.
The property was sold by the sheriff, August 8, 1918, and A. B.
Dutton bid in the property for $20,000, which was something
less than the full amount due on the judgment. After the fore-
closure decree, and after the sheriff's sale thereunder, the $4,500
mortgage before referred to became the property of the Oakville
State Savings Bank. This was on December 26, 1918. On
June 16, 1919, C. T. Wagler, the then owner of the land, sub-
ject to the sale under execution, and his wife executed and de-
livered to D. T. Wallace a quitclaim deed to the land, for the
expressed consideration of $1.00. Wallace signed a contract,
agreeing, in case he redeemed, to pay Springer $500. This con-
tract was introduced in evidence over plaintiff's objection. The
terms of this contract are not entirely clear, since it is not set
out in the abstract. Wallace testifies, not as contended by ap-
pellant, that the deed was to be void, but that the Springer
contract was to be void, in case he did not redeem. The arrange-
ment between Wagler and Wallace was that, if Wallace re-
deemed, he would assume the $4,500 mortgage; that he under-
stood he would have to pay that mortgage in case he redeemed,
because it would become a first mortgage after the first was
paid; that Wagler told him he could not redeem, and there was
no use to try, but Wagler was anxious to have the $4,500 mort-
gage paid; that he, Wallace, was not sure that he could redeem,
but thought he could; that he did take a purchaser, Hall, who
thought the land was worth $180 an acre, and was willing to
buy the land, and would have bought the land, but for the Gates
deed, which will be referred to later; that Hall said that the
title seemed to be tied up somehow by the Gates deed. Wallace
further testified that he had made arrangements for the money

to redeem, and he had a chance to sell it, and found the Gates deed on record, and Hall would not have anything to do with it until the title was cleared up.

Hall testifies that he went with Wallace to Wagler in regard to the Wallace deed and the redemption; that he went with Wallace to look at the farm, and told Wallace he would buy it if he could get a good title; that he went to Springer, and, after an examination of the records, found the Gates deed.

Some five weeks after the deed from Wagler to Wallace,— to be exact, July 24, 1919,—Wagler and wife executed to plaintiff, Gates, a quitclaim deed to the land. Appellees contend that, at that time, the Waglers had nothing to convey, and that they had no title or interest whatever in or to the land. We do not understand appellant to dispute this proposition, if the Wallace deed is valid. Their contention is that the Wallace deed was void because, under the agreement between Wagler and Wallace, Wallace did not redeem. The consideration for the deed to Gates was $10, but he testified that he told Wagler, when the Gates deed was executed, that, if he could give him the deed, they would sell the land, and, as far as it went, it was to be applied on the $4,500 debt; that he did not say he would cancel the whole debt, but as far as it went; that he held the deed under these conditions; that he took it in his name for the Oakville bank, of which he was president; that the certain conditions mentioned were that, if Mr. Wagler would pay off this note, witness would give him a deed for it; that "that is the same thing I wanted;" that Wagler told him about the Wallace deed. Gates at first sought to redeem as the title holder, and on the theory that the Wallace deed was void; and later, Gates seemed to have changed his position somewhat, and claims the right to redeem as a junior lien holder.

On August 6, 1919, Gates attempted to redeem the land from the execution sale, and tendered and paid to Ives, clerk of the district court, $21,100.50, as the amount necessary to redeem the land, and claims that this is the amount given him by the clerk, who says he did not know of taxes paid after the sale. Appellees contend the amount paid was not sufficient, by about $2,400; and in his pleadings appellant offered to pay whatever amount should be found due. This matter as to the

amount of the tender will be referred to later. The clerk refused to permit redemption, on the ground, as we understand it, that plaintiff, not being the owner because of the Wallace deed, was not entitled to redeem. On June 24, 1919, the administratrix issued a general execution for the balance on the foreclosure judgment, and levied upon the equity of redemption of C. T. Wagler, a party defendant in the original suit, against whom the original judgment ran; and the sheriff was proceeding to sell said equity, to satisfy the balance of the judgment. In the original petition, plaintiff alleged, among other things, that he is the owner in fee simple absolute of the land in question; recites the proceedings had under the sale, and his attempt to redeem, and the deposit of the money with the clerk, and that he was then and has been ever since, and now is, ready, able, and willing to pay the amount necessary to redeem. To the petition is attached an affidavit by plaintiff, sworn to by him on August 6, 1919, purporting to be an affidavit required by Section 4057 of the Code. The affidavit states, in substance, that Gates is the owner and title holder of the land, and as such is entitled to make redemption from the execution sale; that the clerk refuses to allow him to redeem, on the ground that one Wallace has the superior right to redeem, and that whatever right Gates has is inferior to said Wallace's right. The affidavit further states that, whatever the claim of said Wallace is, the same is entirely without merit, and that affiant is the one and the only one entitled to redeem at this time from said sale; that he therefore deposits with the clerk the amount necessary to redeem, and demands a certificate of redemption and the summary denial of any or all right in the said Wallace or any other person.

Though the petition recites that the suit is brought under Section 4057, there was no time prescribed by the court, as therein provided, for hearing, and the action was brought as an action in equity. It will be noticed by the foregoing that plaintiff's claim was that he was the title holder, and the only person entitled to redeem, and that his claimed right was based upon the deed from Wagler to him. There is no suggestion in the affidavit or petition in regard to the $4,500 mortgage, or

that it was on behalf of the bank, or that redemption was sought because of the $4,500 mortgage as a junior lien.

The administratrix, answering, denied that plaintiff was the owner in fee of any of the land; denies that plaintiff has any right, title, or interest whatever thereto; admits the foreclosure proceedings and the sale thereunder; admits that, on August 6, 1919, plaintiff tendered to Ives the amount stated for the redemption of said land, and that Ives refused to allow plaintiff to redeem. She denies that said sum was the amount necessary to redeem from said sale, but avers that, as shown by the pleadings and proceedings in the foreclosure suit, A. B. Dutton, the foreclosure purchaser, was compelled to advance to the receiver appointed by the court in said suit the sum of $2,400, for the payment of taxes on said real estate and for the redemption of the same from tax sale; and that the amount tendered by plaintiff did not include the reimbursement of said A. B. Dutton for the amount paid for taxes or for interest on said amount; and that, therefore, the amount tendered was wholly inadequate. She further shows the ownership of the land in Wagler at the time of the foreclosure, and that they were the owners of the land, having purchased it from Braue, and that they were party defendants to the foreclosure. She then recites the execution of the deed to Wallace, and says that, by reason thereof, said Wallace became entitled to redeem, and that the Waglers had no further interest in the real estate, and no right of redemption therein. She then recites the pretended interest of plaintiff by virtue of his later deed; that plaintiff had no interest in the land, and no right or authority to make redemption; that, on August 6th, Wallace was the only person who could make redemption, and that his right expired on August 8th, without making redemption; that, by reason of the premises, she is entitled to a sheriff's deed. Up to this time, the only parties named as defendants are those named in the caption.

On August 15, 1919, plaintiff amended his petition, stating that he makes the National State Bank of Burlington a party hereto, and avers that it has a lien upon the real estate for $22,000; that said lien is by way of a mortgage, and is a first lien after the payment of the amount necessary to redeem from

the defendant Dutton, administratrix. In the same pleading, the Oakville bank was made a party, and the petition avers that its interest in the real estate is by reason of a mortgage given by the Waglers to Braue, which was assigned to said bank; avers that its claims are junior and inferior to the claims of the Burlington bank; and makes the Oakville bank a party, in order that its rights may be adjudicated. The same pleading recited that it made Wallace and Wagler and wife parties, alleging that Wallace claims to have some rights in the real estate superior to plaintiff, but avers that the said claim is without merit, and that Wallace has no interest in the property, and prays a decree accordingly; avers that the Waglers are interested in the controversy by reason of their having a mortgage upon the real estate to Braue, which is still unsatisfied. The Burlington and Oakville banks appeared and answered, admitting the allegations in said amendment, and an amendment filed, September 26, 1919, as to them. But no notice was served upon, and there was no appearance for, Wallace or the Waglers. A. B. Dutton, the holder of the certificate, is not made a party, nor is Braue.

For reply to Paragraph 3 of the answer, in regard to the amount necessary to redeem, plaintiff alleged:

"Plaintiff shows that he was advised by defendant Ives that the amount of $21,100.50 was the amount required for redemption, and that was the amount deposited with the clerk, upon his statement to that effect; that the plaintiff has no knowledge, information, or belief as to any further sum that may be necessary to redeem, but, as stated in his petition, he has been at all times ready and willing, and now is, and tenders into court, any additional amount necessary to make the redemption."

The reply also denies all allegations of Paragraph 4, except that it admits that the Waglers were the owners of the real estate, and states further that any deed which may have been made from the Waglers to Wallace was void and without consideration.

We have set out the reply to Paragraph 3 fully, and as it is stated, to show that the plaintiff does not deny, even upon information and belief, the defendants' allegation that the amount deposited was insufficient. While that fact is not ex-

pressly admitted, it seems to us that it does inferentially admit that the amount was insufficient, by offering to pay any further sum that may be found necessary.

Thereafter, plaintiff, on September 26, 1919, filed a further amendment to the petition, and says that, as averred in the petition, he holds the fee-simple title to the real estate; and that a deed was made to him from the Waglers, as before set out. He further alleges the matter of the execution of the $4,500 note and mortgage; the purchase thereof by the Oakville bank, and that it has ever since been the owner thereof; that plaintiff is the president of said bank; and that, as such, and for the benefit of the bank and the second mortgagees of said property (the first mortgage being the Dutton mortgage), he secured the deed to himself, but for the benefit of the bank; that, as president of said bank, and representing the bank, he agreed with Walger that the said note and mortgage for $4,500 would be taken care of by the conveyance to Gates, and that, if plaintiff, as representing the bank, should succeed in making the redemption, the consideration for the transfer of the property should be, and was, the said note and mortgage, in addition to the $10 in cash. The evidence in regard to this allegation has been before set out. This is the first time in the record that the pleadings refer to the claim that plaintiff was acting for the bank in regard to its $4,500 mortgage, which plaintiff alleges was still junior to the Burlington bank's $22,000 mortgage, and it is the first time there was any claim made that plaintiff, either for himself or his bank, was seeking to redeem as a junior lien holder. The plaintiff's affidavit does not refer to any lien, nor state the nature of it as a lien.

1. We have set out the record so fully that it will be unnecessary to discuss the two or three points at any considerable length. We think the record shows, as before indicated, that

1. EXECUTION: sale: redemption: necessity for actual deposit.

plaintiff did not tender a sufficient amount to effect redemption. We said, in *Iowa L. & T. Co. v. Kunsch*, 156 Iowa 91, 94, that the statute contemplates, not merely a tender and offer to pay, which might be sufficient in an action in equity, but an actual deposit of the amount necessary to make redemption. If it be true, as contended by defendants, and as we read the record, that A. B.

Dutton, the purchaser and certificate holder, was entitled to $2,400 more than the amount deposited by plaintiff, it would seem that plaintiff ought not to be permitted to redeem for such smaller amount, and that, too, when A. B. Dutton is not a party to this suit. It is possible that his not being a party is the reason for not going into that matter more fully in the evidence. It is suggested by appellant that this deficiency can be made up when the receivership is closed up. But there is no showing in the record that the receiver has or will have any funds. It would seem that the holding in the *Kunsch* case, supra, is conclusive on the proposition that plaintiff must actually deposit the requisite amount, and not merely tender it in his pleadings. It was also said in the *Kunsch* case, quoting from *Hawkeye Ins. Co. v. Maxwell*, 119 Iowa 672, that it was not very material whether the proceeding was under Section 4057 or an action in equity; and further, that, under Section 4057, the plaintiff must proceed in accordance with the provisions of that statute, and not otherwise.

2. It would seem that the deed to Wallace, if valid, divested the Waglers of any title in the property, and of any right to redeem; also, that the Waglers had no interest to convey to the plaintiff by their deed to him. This seems to be conceded by appellant, inferentially at least. His contention is that the Wallace deed was void. We have already referred to the evidence showing that such is not the case. Furthermore, Wallace is not a party to this action, and any decree to that effect would not be binding upon him. His deed imports a consideration, and this is in addition to the showing made as to what the consideration was. Wallace, then, had the right to redeem up to the last moment of the year for redemption. He alone, as title holder, had such right. The petition herein was filed and the action brought on August 7, 1919, while Wallace still had the right to redeem. After the year was up, there would be no chance for plaintiff to redeem as title holder. Appellant seems to have been undecided or uncertain as to what position to take. As said, he at first relied upon his right to redeem because of the deed to him, and because he was the title holder. The only cases and statutes cited by appellant in the original argument are one as to the method of

2. EXECUTION: sale: redemption: nonowner.

computing the time for the year's redemption, which we do not understand appellees to controvert, and two cases to the effect that the vendee of an execution defendant may redeem. We do not understand appellees to controvert this proposition, because they are contending that Wallace, as vendee of the Waglers, would have the right to redeem, and that he is the only one. The statutes cited are Code Sections 4044, 4045, and 4289, which have reference to the right of the debtor to redeem at any time within one year from the date of sale. Section 4045 also provides that the debtor will, in the meantime, be entitled to the possession of the property. Code Section 4050 is also cited by appellant, and it provides that:

"The terms of redemption, when made by a creditor, in all cases shall be the reimbursement of the amount bid or paid by the holder of the certificate, including all costs, with interest the same as the lien redeemed from bears on the amount of such bid or payment, from the time thereof, but where a mortgagee whose claim is not yet due is the person from whom the redemption is thus to be made, he shall receive on such mortgage only the amount of the principal thereby secured, with unpaid interest thereon to the time of such redemption."

Code Section 4051 provides for redemption by the title holder—that:

"The terms of redemption * * * shall be the payment into the clerk's office of the amount of the certificate, and all sums paid by the holder thereof in effecting redemption, added to the amount of his own lien, or the amount he has credited thereon, if less than the whole, with interest at contract rate on the certificate of sale from its date, and upon sums so paid by way of redemption from date of payment, and upon the amount credited on his own judgment from the time of said credit, in each case including costs."

There is a slight amendment to this statute, which does not affect any question here.

As said, appellant contends that the Wallace deed was void, and upon this assumption he bases the argument that Wagler had the right to redeem, and that, this being so, he could, by deed, give this right to Gates. This might be so if the Wallace deed

was void; otherwise, Wallace, and not plaintiff, would be entitled to redeem as the title holder.

3. It seems to us that appellant has shifted his position and seeks also to redeem as a lien holder on behalf of the Oakville bank, which mortgage or lien of the Oakville bank was acquired after the foreclosure. From plaintiff's pleadings, the Oakville mortgage so acquired was subsequent, not only to the Dutton mortgage, but to the mortgage of the Burlington bank. Code Section 4045 provides that, for the first six months after the day of sale, the right of redemption in the debtor is exclusive. Code Section 4046 provides for redemption by creditors, that:

3. EXECUTION: sale: redemption: necessary affidavit by lien holder.

"If no redemption is made by the debtor, as above provided, thereafter, and at any time within nine months from the day of sale, said redemption may be made by a mortgagee * * * or by any creditor whose claim becomes a lien prior to the expiration of the time allowed for such redemption; * * *"

Code Section 4052 provides for redemption by one creditor from another; and Code Section 4053 provides that:

"After the expiration of nine months from the day of sale, creditors can no longer redeem from each other, except as hereinafter provided."

Furthermore, we think that appellant, seeking to redeem as a lien holder, did not comply with Code Sections 4056 and 4057. Section 4056 provides that:

"The mode of redemption by a lien holder shall be by paying into the clerk's office the amount necessary to effect the same, computed as above provided, and filing therein his affidavit, or that of his agent or attorney, stating as nearly as practicable the nature of his lien and the amount still due and unpaid thereon. If he is unwilling to hold the property and credit the debtor thereon the full amount of his lien, he must state the utmost amount he is willing to credit him with."

Section 4057 provides, in part, that:

"In case any question arises as to the right to redeem, or the amount of any lien, the person claiming such right may deposit the necessary amount therefor with the clerk, accompanied with the affidavit above required, and also stating therein

the nature of such question or objection, which question or objection shall be submitted to the court or a judge thereof as soon as practicable thereafter, upon such notice as it or he shall prescribe.''

No such affidavit was filed. The substance of it has been before set out, and it does not refer at all to the $4,500 mortgage or to any claim to redeem thereunder.

There may be other sections of the statute having a bearing, but they are not cited by either side. Some of these sections were discussed in *Burns v. Hanby*, 184 Iowa 727, 732, wherein it was pointed out that the mode of redemption of a junior lien holder is set forth in Sections 4049, 4050, and 4056, and the mode of redemption by the title holder is under Section 4051. In that case, the plaintiff, as a junior lien holder, conformed to some of the provisions of the statute, but failed to conform to the requirements of Section 4056, in that she failed to file the affidavit therein required. The change in Section 4056 is pointed out, and we said that the general purpose of the change in the statute was to reduce the method of redemption to a more definite form, and for that purpose to require some degree of formality, and a public record; that it, in effect, withdrew sanction from the tacking of liens and redemptions by mere private transactions of purchase between lien holders. It was further pointed out that Section 4056 not only requires an affidavit to be filed, which shall set forth certain facts for the information, both of the title holder and of subsequent redemptioners, but requires also that the clerk shall enter such redemption upon the sale book. The opinion states that the court is not prepared to hold that the omission to file such affidavit was fatal to the redemptioner, if it were made to appear that the requisite facts were made to appear by the clerk in appropriate entries upon the sale book, or if the subsequent redemptioner had actual notice of the attempted redemption by the first redemptioner, and the extent thereof. Such facts were wanting in that case, as they are in the instant case.

We may have gone into the matter more fully than was necessary. Without further discussion, we are of opinion that, under the record, plaintiff did not show himself entitled to redeem, either as title holder or as a junior lien holder. It follows

that the decree of the district court must be, and it is,—*Affirmed.*

Evans, C. J., Weaver and De Graff, JJ., concur.